69900. O'KELLEY v. THE STATE.
(333 SE2d 838)

BEASLEY, Judge.

O'Kelley was charged, tried and convicted of three counts of child molestation, five counts of aggravated sodomy and one count of rape. He appeals from the judgments of conviction and the procedure

employed in sentencing.

1. Appellant maintains that the court erred in instructing the jury that defense witnesses and the appellant had violated the rule of sequestration and that the jury should weigh that fact when evaluating the witnesses' (defendant's two children) credibility.

First of all, the judge's instruction, given in the course of the daughter's testimony, related only to her testimony and not that of the son. It was given after it was brought to light, during the court's inquiry of the witness in the absence of the jury, that she had talked to her father the night before about the proceedings of that day and that he had told her what had been testified to in court. As a result, she volunteered to come and testify in his behalf to challenge what had been said by a state's witness. The inquiry was made because her name had not been given when, at the beginning of the trial, the state invoked the rule of sequestration and ordered that the defense reveal its witnesses, presumably so they could be properly instructed by the court. Defendant's counsel said he had none.[1] Thus there was no reason for the court to instruct defendant, or his daughter who was not even in court, that they should not discuss the case during any recess or overnight or at any other time until the evidence was concluded or the witness was excused from further appearance. So it should be of no surprise that defendant went home and had some discussion of his day's events with his sixteen-year-old daughter.

This apparently innocent relaying of information was the precise catalyst that brought the witness to court to testify otherwise and thus constituted the very evil which the law seeks to avoid by the rule of sequestration, i.e., one witness' testimony being colored by knowledge of another's. See, e.g., *Lackey v. State*, 246 Ga. 331, 334 (5) (271 SE2d 478) (1980). The rule, of course, merely literally prohibits witnesses from being examined in the *hearing* of each other. OCGA § 24-9-61. *Boyd v. State*, 168 Ga. App. 246, 250 (5) (308 SE2d 626) (1983). But obviously, if the purpose of the rule is to be adequately served, witnesses may not be *told* what prior witnesses have said either. Otherwise the same undesired influence can result to impurify their testimony and thereby render its credibility questionable. The clear import of the statute is to preserve the integrity of testimony, with the ultimate goal of arriving at the truth. Thus, "the rule extends to communications, direct and indirect, between witnesses outside the courtroom, . . . ." *Lackey*, supra at 335. Consequently, when the rule is invoked, the court will usually, and should, instruct all witnesses not only to remain outside of the courtroom but also to not discuss the

---

[1] Although he and the court referred to them as "rebuttal" witnesses, we presume from the brief on appeal and the context at trial that what is meant is defense witnesses, since the state would have rebuttal witnesses; defendant might then have surrebuttal witnesses.

case with the other witnesses or parties until the evidence is concluded or both have been excused from further appearance.[2] This would be a fulfillment of the facilitating portion of the statute, which commands: "The court shall take proper care to effect this object as far as practicable and convenient, . . . ." OCGA § 24-9-61. Of course, that was not done in this case because defendant presented the court with no witnesses to instruct, and there was no reason to instruct them.

When the court gave the now-challenged instruction to the jury, after bringing the jury back and just before the daughter's testimony continued, defendant failed to object. Although he asked to make a motion outside the presence of the jury, he agreed with the court's direction that it be reserved; he never articulated the motion or raised it again or perfected it in any way. Thus, he waived it. Where a defendant makes no motion for mistrial, either at the time of his objection or after the court's curative instruction, there is nothing for us to review. *Miller v. State*, 169 Ga. App. 668, 669 (1) (314 SE2d 684) (1984); see also *Williams v. State*, 251 Ga. 749, 797 (10) (312 SE2d 40) (1983).

What ends the matter, however, is that the court correctly instructed the jury that the overnight discussion could be taken by it in weighing her credibility. For even if there had been a violation of the rule of sequestration here, " '[i]n criminal cases, the violation of the rule of sequestration of *any* witness either for the defense or for the prosecution goes to the credibility rather than to the admissibility of the witness' testimony. [Cits.]' " *Baughman v. State*, 173 Ga. App. 426, 427 (2) (326 SE2d 800) (1985). While the court probably should not have included in the instruction what amounted to testimony by it, i.e., a narrative of what the court had heard from this witness out of the jury's presence, no harm was done because the witness was later cross-examined on the subject before the jury.[3] Also, the court never stated to the jury that the rule of sequestration had been violated by defendant or by the witness and cast no aspersions of wilfulness or deliberateness against either of them. Although it referred to the "don't discuss outside" rule as being a part of the sequestration or "don't be here to hear" rule, that fine, technical legal dichotomy would be of no significance to the jury.

---

[2] There seemed to be some question in this case as to whether counsel could tell the witness what an earlier witness had said. Of course he may not or the same damage will have been done. If it appears necessary or there is any doubt, the court should instruct counsel, too.

[3] This problem would have been obviated by simply giving the instruction at the end of the witness' testimony or in the charge at the end of the case. It was unnecessary to instruct the jury on credibility at this stage, the court having itself properly determined that the testimony was admissible.

2. As his second enumeration of error, appellant argues that the trial court erred in failing to allow defense counsel to examine the shorthand notes of appellant's statements made during custodial interrogation.

Appellant asserts a violation of OCGA § 17-7-210, which provides in pertinent part that: "(a) At least ten days prior to the trial of the case, the defendant shall be entitled to have a copy of any statement given by him while in police custody . . . (b) If the defendant's statement is oral or partially oral, the prosecution shall furnish, in writing, all relevant and material portions of the defendant's statement . . . (d) If the defendant's statement is oral, no relevant and material (incriminating or inculpatory) portion of the statement of the defendant may be used against the defendant unless it has been previously furnished to the defendant, if a timely written request for a copy of the statement has been made by the defendant."

The intent is to preclude the state from ignoring the discovery rights of an accused and provides a penalty if the state ignores its responsibility. Upon proper demand, the state must provide defense counsel with a written summary of all relevant and material statements made by defendant while in custody. See *Reed v. State,* 163 Ga. App. 364, 365 (2) (295 SE2d 108) (1982).

During the trial of the instant case, it became known that certain oral statements made by appellant to a detective on the case were originally taken down in shorthand by the detective. In response to appellant's motion under OCGA § 17-7-210, inculpatory statements made to this detective were given to appellant. The detective testified that the statements given to the defense were exact quotes of all inculpatory statements made by appellant to the detective, not merely summaries of appellant's statements. There is nothing in the record to dispute that this was so. Nor was there any request by the defense for the court to make an in-camera inspection of the shorthand notes to see if they were accurately reproduced in the statements given to appellant. Appellant did not claim that there was any exculpatory material in the notes nor did he ask for an in-camera inspection to determine the presence of exculpatory material.

It is well established that there is no Georgia procedure requiring the district attorney to open his files to the accused, " 'nor is the accused entitled as a matter of right to receive copies of police reports and investigation reports made in the course of preparing the case against the [accused].' " *Baker v. State,* 245 Ga. 657, 661 (3) (266 SE2d 477) (1980). Moreover, whether the statements contained inculpatory or exculpatory information, the appellant has made no showing that any refusal to supply him with the shorthand notes materially affected his case.

Appellant also argues that his lack of access to the shorthand

notes violated his constitutional right of confrontation. His argument is unpersuasive.

The essential purpose of confrontation is cross-examination. *Denson v. State*, 150 Ga. 618, 622 (4) (104 SE 780) (1920), appeal dismissed, 258 U. S. 608 (42 SC 316, 66 LE 788) (1922). Confrontation in a criminal trial means the right to ask questions and secure answers from the witness confronted. *Lingerfelt v. State*, 235 Ga. 139, 140 (218 SE2d 752) (1975). Here, appellant had the right and opportunity to ask questions and secure answers from the detective, the very preparer of the subject notes. The detective was cross-examined at length concerning her interview with the appellant, and the appellant, who testified, had the opportunity to testify as to his version of the interview with the detective. There was no violation of the appellant's right of confrontation.

3. Appellant alleges that the trial court erred when it "failed to exclude testimony relating to Appellant's thought processes offered by an unqualified lay witness."

During the trial Detective Rowden, an investigator of crimes against persons with the Gwinnett County Police Department who had arrested appellant on the charges of sexual abuse of his young stepdaughters, testified about her interview with O'Kelley. Rowden testified that while discussing the elder stepdaughter Bridgette, appellant stated, "I loved Bridgette. To me she was just a little Bonnie." Bonnie O'Kelley was appellant's wife and the mother of appellant's three stepdaughters. On redirect examination, the detective was asked to comment on the statement. Rowden responded, "In the context of the entire investigation, the things that had been told to me by people I had interviewed, it would appear that Bridgette had become a substitute for Mrs. O'Kelley."

Appellant asserts that the detective's statement is an opinion regarding appellant's psychological processes and as such, cannot be rendered by a lay person but must be given by an expert.

"Where the question under examination, and to be decided by the jury, shall be one of opinion, any witness may swear to his opinion or belief, giving the reasons therefor." OCGA § 24-9-65. Moreover, a lay witness can give opinion testimony as long as he gives sufficient facts to form the basis of his opinion; a person's state of mind or mental condition is properly the subject of opinion testimony and that after narrating the facts and circumstances upon which his conclusion is based, a nonexpert witness may express his opinion as to the state of mind or mental condition of another. *Leonard v. State*, 157 Ga. App. 37, 38 (1) (276 SE2d 94) (1981).

Detective Rowden was fully aware of the charges against appellant, had interviewed the parties at considerable length, had arranged for medical examination of the victims and was aware of the results of

such examinations. At trial she gave extensive and detailed narration of facts upon which she based her opinions in the case, prior to the objected-to statement. The detective's testimony was properly admitted.

4. Appellant maintains that the court erred in failing to give limiting instructions to the jury after the prosecutor "improperly" referred to appellant's "confession" where no such confession was in evidence.

During the state's closing argument, the following exchange transpired: "The State: . . . He has denied the confession or the admission to the police officers. Defense Counsel: Your Honor, I object. The State: Excuse me. Defense Counsel: There has been no confession by him. The State: I am sorry, your Honor. That was improper. I meant admissions, and I tried to correct myself. The Court: All right. The jury will keep that in mind."

OCGA § 17-8-75 provides: "Where counsel in the hearing of the jury make statements of prejudicial matters which are not in evidence, it is the duty of the court to interpose and prevent the same. On objection made, the court shall also rebuke the counsel and by all needful and proper instructions to the jury endeavor to remove the improper impression from their minds; or, in his discretion, he may order a mistrial if the prosecuting attorney is the offender."

Appellant argues that the state's comment was clearly so prejudicial to appellant that the court's failure to rebuke counsel and provide sufficient limiting instruction to the jury requires reversal of O'Kelley's convictions.

Following the prosecutor's comment, defense counsel did not request curative instruction from the court or make a motion for mistrial. A mere objection to improper argument of counsel, without more, is not sufficient to invoke action by the court which appellant now says should have been taken. In the absence of a specific motion either for a mistrial, or that the jury be instructed to disregard the argument, it is not error to fail to grant a mistrial or to instruct the jury. *Holt v. State*, 147 Ga. App. 186, 187 (5) (248 SE2d 223) (1978); *Carroll v. State*, 147 Ga. App. 332, 335 (7) (248 SE2d 702) (1978). Nor is a judge required to grant a mistrial on his own motion where defense counsel waives his objection and fails to specify what further form of relief, if any, is desired. *Vernon v. State*, 152 Ga. App. 616, 618 (2) (263 SE2d 503) (1979).

Further, though the prosecutor's comment was apparently an incorrect characterization of any statement by the accused, it was not intentionally prejudicial or inflammatory, but rather inadvertent and immediately retracted by the state which, without remonstrance from the court, itself admitted the mistake. Also, the court did not fail to give instruction to the jury, but admonished them to keep the state's

self-proclaimed impropriety in mind. The extent of a rebuke and instruction is within the discretion of the court. *Benefield v. State*, 140 Ga. App. 727, 730 (3) (232 SE2d 89) (1976).

Even characterizing the prosecutor's argument as being uncorrected by the court, no miscarriage of justice resulted inasmuch as it is highly probable that the error did not contribute to the judgment. See *Jones v. State*, 159 Ga. App. 704, 705 (2) (285 SE2d 45) (1981).

5. Lastly, appellant argues that the trial court erred in prohibiting defense counsel from reading and responding to the pre-sentence investigation report prepared by a probation officer prior to sentencing, in violation of appellant's constitutional rights to due process of law, effective assistance of counsel, and confrontation.

Following the jury's return of verdicts of guilty as to all nine counts in the indictment, the court granted appellant's request for a pre-sentence investigation prior to sentencing. Pursuant to the policy of the circuit, the state and the appellant were not permitted to read or respond to the pre-sentence investigative report submitted to the court. Neither following his conviction at trial nor at the sentencing hearing did appellant raise his objections to the court policy of non-disclosure, or did he assert constitutional deprivation in this regard. As no objections were raised at the pre-sentence hearing, this court is precluded from reviewing the proceedings in this regard. *Williams v. State*, 165 Ga. App. 553, 554 (3) (301 SE2d 908) (1983).

Further, appellant speculates that the pre-sentence investigation report was impermissively used to determine the length of sentence. We feel compelled to note that, even if appellant had raised proper objection so as not to preclude our review, the transcript reveals no cause for reversal inasmuch as it does not affirmatively show that the trial court used the pre-sentence report for the unlawful purpose of increasing the sentence, rather than for the lawful purpose of determining whether to grant probation. *Jones v. State*, 165 Ga. App. 180, 183 (5) (300 SE2d 534) (1983).

This enumeration is likewise without merit.

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED JUNE 17, 1985 —
REHEARING DENIED JULY 16, 1985.

*Mark E. Layng, Steven A. Westby, Robert G. Fierer*, for appellant.

*Thomas C. Lawler*, District Attorney, *Stephen E. Franzen, Daniel J. Porter, Robert V. Rodatus*, Assistant District Attorneys, for appellee.