71998. DICKEY v. THE STATE.
(346 SE2d 864)

DEEN, Presiding Judge.

The appellant, Robert Dickey, appeals the denial of his motion

for new trial following his conviction of two counts of armed robbery (OCGA § 16-8-41).

1. A pretrial motion for discovery pursuant to OCGA §§ 17-7-210 and 17-7-211 requested that the state make available any written or oral in-custody statement given by defendant. The state supplied what was entitled a "summary" of Dickey's oral statement to an investigator: "The defendant stated that he met a man in Atlanta known as Slim; he went with Slim to a home, the purpose of going to the home was to take everyone down."

At trial, however, the police investigator testified that when he interviewed Dickey shortly after the occurrence: "Mr. Dickey stated that the night before, that evening, he was at a club on Stewart Avenue and stated the name of the club was the Silver Fox Club (sic). He stated that while he was at the club an unknown white male approached him and asked him if he wanted to get some money. Mr. Dickey responded by saying, 'Yes, I can use some money.' And went with him asking no further questions. He stated this unknown white male summoned another white male at the club and paid him $10 to drive the two of them to the intersection of I-285 and 85 in DeKalb County and at that time let them out.

"He went on and said that they walked from this location to the victim's house, Mr. Sams' house and while they were en route the other individual who he only knew by the name of Slim stated that they could get a lot of money when they entered this house, they were going to take everyone down. He then stated that he just went along and didn't ask any questions.

"Mr. Dickey went on to say that they arrived at the house and entered the carport area preparing to enter the house when someone came from inside the house and walked out to the carport area. Uh, at this point he said that the two of them then confronted him and pulled out their weapons and took him back inside.

"Mr. Dickey stated he was in the kitchen area and his job was to stay there with the gun on the owner, Mr. Sams, while the other one went through the house. The other perpetrator was gone a few minutes and came back with two small children and a female, where he left them with Mr. Dickey in the kitchen area while he went back through the house. He stated that he remained in the kitchen the entire time, the gun on him, while the other one went throughout the house.

"When the other perpetrator came back into the kitchen area, it was at that time that they realized the police had arrived. So he and the other perpetrator went downstairs and out the back door, and he stated that as they were leaving he was apprehended."

OCGA § 17-7-210 provides in pertinent part: "At least ten days prior to the trial of the case, the defendant shall be entitled to have a

copy of any statement given by him while in police custody. . . . If the defendant's statement is oral or partially oral, the prosecution shall furnish, in writing, all relevant and material portions of the defendant's statement. . . . Failure of the prosecution to comply with a defendant's timely written request for a copy of his statement, . . . shall result in such statement being excluded and suppressed from the prosecution's use. . . . If the defendant's statement is oral, no relevant and material (incriminating or inculpatory) portion of the statement of the defendant may be used against the defendant unless it has been previously furnished to the defendant, if a timely written request for a copy of the statement has been made by the defendant."

"The purpose of the statute is to inform the defendant 'in writing of all relevant and material portions of his own statement that the state may rely upon to his disadvantage.' [Cits.]" *White v. State*, 253 Ga. 106, 109 (2) (317 SE2d 196) (1984). Generally, "[t]he intent is to preclude the state from ignoring the discovery rights of an accused and provides a penalty if the state ignores its responsibility." *O'Kelley v. State*, 175 Ga. App. 503, 506 (2) (333 SE2d 838) (1985).

We agree with the appellant that the summary of his statement provided by the state pursuant to OCGA § 17-7-210 was woefully inadequate. However, in *Wallin v. State*, 248 Ga. 29 (279 SE2d 687) (1981), where the state similarly provided the defendant with an incomplete in-custody statement, the Supreme Court applied the "highly probable that it did not contribute to the verdict" test and found the error harmless. The facts of the instant case demand the same result.

Edward Sams testified that the appellant and another man rushed at him with guns as he walked out of his door and pushed him back into the house. They demanded and took his money. The appellant then held a chrome plated revolver on Sams as the other man went through the house and came back with Sams' stepdaughter and two grandsons; the appellant then held the gun on all four victims while the other man proceeded to ransack the house. Sams also had to remove a ring and give it to appellant. Police officers showed up while the armed robbery was in progress, and both men fled. The appellant was chased and apprehended by one officer, and the chrome plated revolver and Sams' ring were on the appellant's person. All four victims positively identified the appellant.

This is a plain and simple case of the evidence of the appellant's guilt, exclusive of the custodial statement, being overwhelming. Accordingly, the state's failure to provide the appellant with a complete in-custody statement was harmless error.

2. The appellant's remaining enumerations of error are without merit.

*Judgment affirmed. Banke, C. J., McMurray, P. J., Birdsong,*

*P. J., Carley, Sognier and Pope, JJ., concur. Benham and Beasley, JJ., dissent.*

BEASLEY, Judge, dissenting.

Dickey maintains that the custodial statement testified to at trial by the investigator was more extensive, detailed, significantly different, and far more inculpatory than the "summary" so as to violate OCGA § 17-7-210. In that it must be taken as having contributed to the jury's verdicts to his detriment, the state not having shown it was harmless, he argues reversal is required.

The majority agrees that the state did not fulfill its statutory responsibility here, in that the defendant was not provided all relevant and material portions of the custodial statement utilized by the state. The state itself concedes that the statement admitted at trial was more detailed than the summary given to defendant prior to trial but contends that the summary put Dickey on notice that his statement proved that his purpose in going to Sams' house was to "take everyone down," i.e., a "clear reference" to the pair's intention to commit armed robbery. Even if we agree solely for the sake of argument that the street parlance "take everyone down" clearly notified Dickey that the state was going to use that part of the custodial statement to prove that the purpose of the pair's going to Sams' home was the intention to commit armed robbery, this would not absolve the state from providing Dickey with *all* relevant and material portions of his statement upon which the state might rely to Dickey's disadvantage. See *White v. State*, 253 Ga. 106, 109 (2) (317 SE2d 196) (1984). While the investigator's testimony about the statement in question certainly encompassed the substance of the summary, it went well beyond it by providing, among other things, a material element of the charged armed robbery, that is, the "use of an offensive weapon." OCGA § 16-8-41 (a). What was revealed did not comply with OCGA § 17-7-210.

According to *Wallin v. State*, 248 Ga. 29, 31(5)-32 (279 SE2d 687) (1981), the next inquiry is whether the admission of the statement at trial was harmful.

Although there was other substantial evidence at trial of Dickey's guilt, I am unable to say with reasonable certainty that no harm resulted from the state's unexplained failure to obey the straightforward statutory requirement of disclosure. *Reed v. State*, 163 Ga. App. 364, 365 (2) (295 SE2d 108) (1982). To rule otherwise would be to fail to recognize the impact of a criminal defendant's own admissions upon the jury. It may very well make the difference to a juror even where, in our view, the evidence absent the statement is overwhelming. Moreover, retreat to a position of "harmless error" based on nearly conclusive other evidence would allow the state to skimp to a skeleton on the divulgence mandated by the legislature, deprive the

defendant of information he is entitled to, and secure a conviction with the added evidence as insurance to persuade, however immeasurably, the factfinder. Such would render the requirement empty and meaningless in at least some cases, and we would have to divine in which cases it made a difference for the jury.

Exclusion is mandated by the legislature. This sanction against the state is expressly provided by the statute and is couched in words that compel non-introduction of the fuller statement into the trial. This is not a judicially-created exclusionary rule. Thus the courts should not allow the avoidance of the statute's clear directives by a liberal application of the judicially-conceived "harmless error" rule. The majority recognizes that the statute was violated twice, first by the state in failing to provide the entire statement and then by the trial court in not excluding the statement. Yet the dual non-compliance is excused by the conclusion that it did not affect the outcome.

I believe the trial court erred in not granting the defendant a new trial because of the admission into evidence of a statement concerning which the state contravened OCGA § 17-7-210. For "[t]he courts may grant new trials in all cases when any material evidence may be illegally admitted to or illegally withheld from the jury over the objection of the movant." OCGA § 5-5-22. Upon a retrial the custodial statement in question would be usable if the statute has then been complied with; otherwise not. *Reed v. State,* supra at 365 (2).

I am authorized to state that Judge Benham joins in this dissent.

DECIDED JUNE 17, 1986.

*William T. Hankins III, Robert G. Rubin,* for appellant.
*Robert E. Wilson, District Attorney, Barbara Conroy, Assistant District Attorney,* for appellee.