## A03A1227. FLOYD v. THE STATE.
### (587 SE2d 203)

ADAMS, Judge.

Luther E. Floyd appeals from the trial court's denial of his motion for new trial following his conviction for armed robbery. As his sole issue on appeal, Floyd contends that the trial court erred in not granting a new trial based on the State's failure to produce exculpatory evidence as required by *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963).

Floyd was convicted in connection with the robbery of a movie rental store in Jesup on September 3, 1996. Two men with masks entered the store and sprayed the clerk with a substance that made her cough and unable to catch her breath. They then took money from the cash drawer and ran out of the store. A police officer began searching for the suspects in a wooded area near the store. The officer ran through the woods to the back of an apartment complex where he discovered rags matching witnesses' descriptions of the men's masks and two sets of footprints. He followed the footprints until they ended at a paved street. Tracking dogs were then employed in the search, and they led police to Floyd's apartment where they located two prints from the same shoe, which were very similar to the other prints leading up to the house.

Police obtained Floyd's permission to search his apartment, and discovered Floyd's co-defendant, Gary Gallamore, hiding in a bedroom closet. His clothes were wet. Police also found a wet sweatshirt on the bedroom floor and two pairs of tennis shoes that were similar in tread design to the footprints seen behind the apartment complex. During a later search of the apartment, police found hidden in a duffel bag in the laundry room, money, checks, and other items taken from the movie rental store during the robbery.

At trial, Gallamore testified that he worked that day with Floyd. When they got off work, Gallamore went home and then met up with

Floyd again at his girlfriend's sister's house. From there, they went back to Floyd's house where Gallamore helped him pack in preparation for moving. Gallamore said he was at Floyd's apartment when the police arrived and that he hid in the closet because he had some outstanding warrants. He testified that no one came up to the apartment before the police arrived.

The state then entered into evidence for impeachment purposes a handwritten statement that Gallamore gave police at the time of his arrest. In that statement, Gallamore told police that he had come to Floyd's house and knocked on the door, and Floyd let him in. There was no reference to the two having been together earlier. Gallamore said that he had hidden in the closet because he thought the police were there to get him for an old fine. At trial, Gallamore denied making this statement.

Floyd contends that the state's failure to produce Gallamore's statement prior to trial was a violation of *Brady* because the statement was exculpatory in that it showed that Floyd was home when Gallamore arrived at his apartment, and only one set of footprints led to the apartment. But Floyd failed to raise a *Brady* objection at trial, and thus, he has waived his right to raise this objection on appeal. *Jones v. State*, 258 Ga. 249, 250 (6) (368 SE2d 313) (1988); *Mondy v. State*, 229 Ga. App. 311, 312 (1) (494 SE2d 176) (1997). Floyd's attorney told the trial court that the state had not provided him with a copy of Gallamore's statement, although he had filed a *Brady* motion, and further noted on the record that in light of this nondisclosure, he had an ethical duty not to put Floyd on the stand as he had intended to do. But he raised no objection to the statement on *Brady* grounds, nor did he object to the introduction of the statement into evidence.

Even if Floyd had properly preserved this argument for appeal, however, no error occurred. " 'There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued.' *Strickler v. Greene*[, 527 U. S. 263, 281-282 (II) (119 SC 1936, 144 LE2d 286) (1999)]." *Nikitin v. State*, 257 Ga. App. 852, 854 (1) (572 SE2d 377) (2002). Assuming, without deciding, that the statement was exculpatory, the state did not suppress the evidence because the prosecutor introduced it at trial, and Floyd had ample opportunity to cross-examine Gallamore. "*Brady* does not require pre-trial disclosure of materials sought under a *Brady* motion. *Brady* is not violated when the *Brady* material is available to defendants during trial." (Cita-

tions and punctuation omitted.) *Dennard v. State*, 263 Ga. 453, 454 (4) (435 SE2d 26) (1993).[1]

And Floyd has not demonstrated that earlier disclosure of the statement would have benefitted his defense, and thus that the delayed disclosure deprived him of a fair trial. See *Dennard*, supra. "Mere speculation by [Floyd] that he 'might' have pursued a different course of action had he received the evidence earlier, is not sufficient." (Citations omitted.) *Gresham v. State*, 265 Ga. 730, 731 (1) (462 SE2d 370) (1995). The state noted at the new trial hearing that Floyd's defense at trial was factually consistent with the statement that he had given police at the time of his arrest. Thus, if Floyd had presented a different factual defense at trial, the state could have introduced his earlier statement in impeachment. As it was, the jury was presented with both of Gallamore's versions of events prior to rendering its verdict. Accordingly, we find that Floyd failed to establish a *Brady* violation, and the trial court properly denied his motion for new trial.

*Judgment affirmed. Andrews, P. J., and Barnes, J., concur.*

DECIDED SEPTEMBER 3, 2003.

*J. Alvin Leaphart*, for appellant.
*Stephen D. Kelley, District Attorney, John B. Johnson III, Assistant District Attorney*, for appellee.

---

[1] Moreover, at the hearing on the motion for new trial, the state noted that it had disclosed the contents of Gallamore's statement at the preliminary hearing through the testimony of a police officer. Although Floyd was represented by earlier counsel at the time, the state argued that he was on notice of Gallamore's statement.